

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| MARTY RAY McMANUS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 3:13CV460–HEH |
| ERIC D. WILSON, *et al.*, | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION
(Granting Defendants' Motion for Summary Judgment)

Marty Ray McManus ("McManus"), a federal prisoner[1] proceeding *pro se* and *in forma pauperis*, brings this *Bivens* action.[2] This action proceeds on his Particularized Complaint. ("Complaint," ECF No. 20.) McManus argues that Defendants violated his First, Eighth, and Fourteenth Amendment rights by searching his cell and confiscating his papers. This matter is before the Court on Defendants' Motion to Dismiss (ECF No. 31) or in the alternative Motion for Summary Judgment (ECF No. 34) on the ground that, *inter alia*, McManus failed to exhaust his administrative remedies. McManus has responded. For the reasons set forth below, the Motion for Summary Judgment (ECF No. 34) will be granted because McManus failed to exhaust his administrative remedies *prior* to filing the present action.

---

[1] According to McManus's most recent notification of change of address, he is now housed in a residential re-entry program in Florence, South Carolina and is no longer incarcerated in the Federal Correctional Complex in Petersburg, Virginia ("FCC Petersburg").

[2] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

## I. Claims For Relief

McManus raises the following claims for relief:

Claim One:  Defendants violated his First Amendment right to access the courts by: (a) confiscating legal documents from his cell on May 26, 2013 and failing to return them; and (b) confiscating legal documents from his cell on April 28, 2014 and failing to return the documents.

Claim Two:  Defendants violated his due process rights by: (a) confiscating legal documents from his cell on May 26, 2013 and failing to return the documents; and (b) confiscating legal documents from his cell on April 28, 2014 and failing to return the documents.

Claim Three: Defendant Lucas violated his Eighth Amendment rights and subjected him to cruel and unusual punishment by harassing him by searching his cell.

(Compl. 4–5.) McManus requests declaratory and injunctive relief and monetary damages. (*Id.* at 6–7.)

## II. Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing

2

affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "'[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the *onus* of proof is imposed.'" *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

Defendants ask the Court to dismiss the action on the ground that McManus failed to exhaust his administrative remedies prior to filing this action. Because the exhaustion of administrative remedies is an affirmative defense, Defendants bear the burden of pleading and proving lack of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007). In support of their Motion for Summary Judgment, the Defendants submitted: (1) the Declaration of Cornelia J. Coll, a Paralegal Specialist, at the Federal Correctional

3

Complex in Butner, North Carolina, which also provides legal services for FCC Petersburg (Mem. Supp. Mot. Summ. J. Ex. 1 ("Coll Declaration"), ECF No. 32–1); (2) McManus's administrative remedy request records from FCC Petersburg (*id.* Attach. 1); (3) the Declaration of Phillip Vaughan, a Special Investigative Support Technician at FCC Petersburg (Mem. Supp. Mot. Summ. J. Ex. 2 ("Vaughan Declaration"), ECF No. 32–3); (4) McManus's relevant disciplinary records (*id.* Attach. 1); and (5) a relevant Confiscation and Disposition of Contraband record (Mem. Supp. Mot. Summ. J. Ex. 3, ECF No. 32–5).

As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324. McManus submitted an unsworn Complaint and an unsworn Opposition and Rebuttal Motion ("Brief in Opposition," ECF No. 36), and some administrative remedy request records that he filed with the Bureau of Prisons ("BOP") (*see, e.g.*, Br. Opp'n Exs. A & B). Because McManus failed to swear to the contents of his Complaint or Brief in Opposition under penalty of perjury, those documents fail to constitute admissible evidence. *See United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004). In light of the foregoing principles and submissions, the facts set forth below are established for purposes of the Motion for Summary Judgment.

### III. Pertinent Undisputed Facts

On October 3, 2011, the United States District Court for the District of South Carolina sentenced McManus to a sixty-five month term of imprisonment for conspiracy to possess with the intent to distribute and distribution of twenty-eight grams or more of

4

cocaine base. (Coll Decl. ¶ 5.) McManus began his incarceration in FCC Petersburg on July 10, 2012. (*Id.*)

## A. Conviction of an Institutional Offense

On May 26, 2013, Defendant Steven Lucas conducted a random search of McManus's cell and discovered that McManus possessed Uniform Commercial Code ("UCC") documents. (Compl. ¶ 10.)[3] Defendant Lucas confiscated the documents and other property. (*Id.*) Defendant Lucas issued an incident report to McManus for possessing an unauthorized item. (Vaughan Decl. ¶ 9 (citing Attach. 1, at 1.) On May 28, 2013, the Unit Disciplinary Committee conducted an administrative hearing on the incident report and found McManus guilty of committing the prohibited act and sanctioned McManus to sixty days loss of commissary privileges, but suspended the sanction for 120 days pending clear conduct by McManus. (*Id.*; *see id.* Attach. 1, at 1.) This action followed on July 18, 2013.

On July 26, 2013, Defendant Arias issued Plaintiff a Confiscation and Disposition of Contraband Form for the items confiscated by Defendant Lucas. (Mem. Supp. Mot. Summ. J. Ex. 3, at 1.) The form indicated that "5 Legal Letter envelopes containing UCC related papers" were found in McManus's possession. (*Id.*) McManus claimed ownership of the contraband and acknowledged he had received a copy of the inventory of confiscated property on June 27, 2013. (*Id.*) The form noted that "[i]nmate was returned personal papers not found to be in relation to UCC documents. The rest was found to be UCC related by SIS." (*Id.*) McManus refused to sign the form as noted by

---

[3] While the Court notes that McManus's Complaint fails to constitute admissible evidence, the Court includes undisputed allegations from the Complaint in order to provide further context.

5

Defendant Arias on July 26, 2013. (*Id.*) On December 6, 2013, Defendant Arias destroyed the contraband UCC documents in accordance with 28 C.F.R. § 553.13 and BOP Program Statement 5580.07, Personal Property, Inmate, after 120 days had passed and Plaintiff failed to establish entitlement to the confiscated property. (*Id.*; *see* Vaughan Decl. ¶ 8.)

### B. August 4, 2013 Cell Search

On August 4, 2013, McManus found Defendant Lucas conducting a shakedown of his cell. Defendant Lucas read McManus's legal papers and harassed him. (Compl. ¶¶ 17–22.)

### C. April 28, 2014 Cell Search

On April 28, 2014, Defendant Lucas conducted a shakedown of McManus's cell and confiscated child support documents. McManus claims that the institution subsequently lost these papers. (Compl. ¶¶ 23–28.)

On June 17, 2014, McManus filed his Particularized Complaint in this Court.

### D. BOP Grievance Procedure

The BOP manages an Administrative Remedy Program "to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). Generally, a federal prisoner exhausts administrative remedies by first attempting to resolve the matter informally by discussing the matter with BOP staff. *See* 28 C.F.R. § 542.13(a). If informal resolution is unsuccessful, the inmate must then submit "a formal written Administrative Remedy Request, on the appropriate form (BP–9)," 28 C.F.R. § 542.14(a), at his place of incarceration. *See* 28 C.F.R. § 542.14(d). "An

6

inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP–10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a).[4]

"An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP–11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response." 28 C.F.R. § 542.15(a). "Appeal to the General Counsel is the final administrative appeal." *Id.*

### E. McManus's Attempts at Exhaustion

During his incarceration in FCC Petersburg, McManus has filed fifteen requests seeking administrative remedies. (Coll Decl. ¶ 6.) McManus filed three administrative remedy requests pertaining to the issues he raises in his Complaint: Remedy Identification Numbers 744980, 750274, and 782490. (*Id.* (citing Attach. 1, at 5–10).)[5]

#### 1. Remedy ID 744980 (Return of Confiscated Materials)

On August 6, 2013,[6] several weeks after filing the immediate action, McManus filed Remedy ID 744980 at the institutional level complaining that his UCC papers had been confiscated and requesting their return. (Coll Decl. ¶ 7 (citing Attach. 1, at 5).) The

---

[4] An inmate who wishes to challenge an institutional conviction is subject to a different grievance procedure. *See Strouse v. Wilson*, No. 3:13CV323, 2015 WL 731637, at *3 (E.D. Va. Feb. 19, 2015) (citing 28 C.F.R. § 542.14(c)(2), (d)(2), & 542.15(b)(1)). McManus does not challenge his institutional conviction in the instant civil action. Moreover, he must do so by a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

[5] The Court employs the pagination assigned by the CM/ECF docketing system for citations to Attachment 1 to Coll's Declaration.

[6] In her Declaration, Coll states that McManus first filed his remedy request on August 12, 2013, however, the attached records state that McManus filed this remedy request on August 6, 2013. (Coll Decl. Attach. 1, at 5.)

institution rejected the administrative remedy request because McManus failed to first address the issue informally with his unit team. (*Id.* (citing Attach. 1, at 5).) McManus attempted to refile on August 12, 2013, however, the institution closed the filing because the remedy request improperly referenced the appeal of his May 26, 2013 incident report, which had already been addressed in a previous remedy. (*Id.* (citing Attach. 1, at 5).) On September 4, 2013, McManus filed an appeal of the institution's decision to the Regional Director. (*Id.* (citing Attach. 1, at 6).) The Regional Director denied the appeal because the appeal improperly referenced an incident report appeal which had already been addressed in a previous remedy. (*Id.* (citing Attach. 1, at 6).) On November 25, 2013, McManus appealed the Regional Director's decision to the National Appeals Administrator, Office of General Counsel, in the BOP's Central Office ("General Counsel"). (*Id.* (citing Attach. 1, at 8).) As of September 3, 2014, the Central Office had not rendered a decision. (*Id.* (citing Attach. 1, at 8).)

2. **Remedy ID 750274 (Harassment and Searching Cell)**

On September 18, 2013, two months after filing this lawsuit, McManus filed Remedy ID 750274 at the institutional level alleging that a correctional officer was harassing him by searching his cell. (Coll Decl. ¶ 8 (citing Attach. 1, at 6).) The institution rejected the filing because McManus submitted the incorrect form and attached too many pages. (*Id.* (citing Attach. 1, at 6).) McManus had the opportunity to refile, but failed to properly do so. (*Id.*) Instead, on September 30, 2013, McManus appealed to the Regional Director. (*Id*; *see* Attach. 1, at 7.) The Regional Director rejected the appeal because he never properly filed the remedy with the institution. (Coll

8

Decl. ¶ 8; *see id.* Attach. 1, at 7.) On October 24, 2013, McManus appealed to the General Counsel, who also rejected the appeal because he failed to follow the instructions on the original rejection notice. (Coll Decl. Attach. 1, at 7; *see* Coll Decl. ¶ 8.)

### 3. Remedy ID 782490 (Loss of Personal Property)

On June 10, 2014, nearly a year after he filed the lawsuit at hand in June 2013, McManus filed Remedy ID 782490 at the institutional level, alleging that a correctional officer lost his personal property. (Coll Decl. ¶ 9 (citing Attach. 1, at 9).) The institution closed the administrative "remedy with an explanation only." (*Id.* (citing Attach. 1, at 9).) On July 15, 2014, McManus filed an appeal to the Regional Director. (*Id.* (citing Attach. 1, at 10).) "The Regional Director closed the appeal with an explanation only."[7] (*Id.* (citing Attach. 1, at 10).) McManus filed no appeal to the General Counsel. (*Id.*)

### III. Analysis

#### A. McManus Demands for Declaratory and Injunctive Relief are Moot

On November 7, 2014, the Court received notice from McManus that he was no longer incarcerated in FCC Petersburg, but had been moved to FMC Butner. (ECF No. 38.) On March 16, 2015, the Court received notice from McManus that he had been moved to a residential re-entry program in Florence, South Carolina. (ECF No. 43.) "[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there."

---

[7] The Government has made no attempt to assist the Court by explaining the meaning of the phrase "explanation only." The BOP administrative remedy records state "STATUS CODE: CLO" and "STATUS REASON: XPL." (Coll Decl. Attach. 1, at 9–10.) While it is unnecessary to decipher the meaning of this phrase for the purposes of the instant Motion for Summary Judgment, in the future, the Government should supply a definition for such cryptic phrases.

*Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) (citing *Incumaa v. Ozmint*, 507 F.3d 281, 286–87 (4th Cir. 2007); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *Taylor v. Rogers*, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986)). Accordingly, McManus's transfer to the residential reentry program moots his demands for declaratory and injunctive relief and such demands will be dismissed.

### B.  Exhaustion

The Prison Litigation Reform Act requires that federal prisoners suing under *Bivens* must exhaust inmate grievance procedures, just as state prisoners must exhaust available administrative processes prior to instituting a § 1983 suit. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The pertinent statute provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This language "naturally requires a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands." *Booth v. Churner*, 532 U.S. 731, 738 (2001). Generally, in order to satisfy the exhaustion requirement, the inmate must file a grievance raising the claim and pursue the grievance through all available levels of appeal, prior to bringing his or her action to court. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Additionally, the United States Supreme Court has instructed that section 1997e(a) "requires proper exhaustion." *Id.* at 93. The Supreme Court explained that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules," *id.* at 90, "'so

10

that the agency addresses the issues on the merits.'" *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). The applicable prison rules "define the boundaries of proper exhaustion." *See Jones v. Bock*, 549 U.S. 199, 218 (2007). Exhaustion is mandatory, and courts lack discretion to waive the exhaustion requirement. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

In addition, "[u]nder the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court. . . . If exhaustion was not completed at the time of filing, dismissal is mandatory." *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003). "[E]xhaustion pendente lite undermines the objectives of section 1997e(a) and . . . the language of section 1997e(a) clearly contemplates exhaustion prior to the commencement of the action as an indispensable requirement, thus requiring outright dismissal of such actions . . . ." *Id.* at 628.

McManus failed to exhaust his administrative remedies for any of his claims prior to filing this action on July 18, 2013. *See Robinson v. Johnson*, No. 3:07cv449, 2009 WL 874530, at *7 (E.D. Va. Mar. 26, 2009) (citations omitted). Thus, "under the plain language of 1997(e) . . . dismissal is mandatory." *Id.* at 627. McManus fails to offer any persuasive argument demonstrating that the exhaustion requirement should be excused.

At most, McManus argues that "he made every attempt to have his remedy addressed" and "made every attempt to comply with the applicable procedural rules and never attempted to circumvent any institutional procedure." (Br. Opp'n 3.) He claims the "circumstances of this complaint should allow him to proceed with his legal action or afford him the opportunity to resolve the administrative remedy process." (*Id.*)

11

McManus's administrative remedy requests were pursued after he filed this action and are thus irrelevant to the exhaustion inquiry. *See Johnson*, 340 F.3d at 628. Moreover, McManus's "[a]iry generalities [and] conclusory assertions" that he made every effort to exhaust "[do] not suffice to stave off summary judgment." *United States v. Roane*, 378 F.3d 382, 400–01 (4th Cir. 2004) (internal quotation marks omitted) (first and third alteration in original) (citations omitted).[8] Accordingly, the Motion for Summary Judgment (ECF No. 34) will be granted and the action will be dismissed without prejudice.

An appropriate Order shall accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: May 27, 2015
Richmond, Virginia

---

[8] The Court recognizes the United States Court of Appeals for the Fourth Circuit's recent decision adopting an exception to the exhaustion requirement when an inmate "reasonably believed that he had sufficiently exhausted his [administrative] remedies by complying with an internal investigation" of an officer's use of excessive force against him. *Blake v. Ross*, --- F.3d ----, No. 13-7279, 2015 WL 2405241, at *1 (4th Cir. May 21, 2015). Allegations of the like are not present here.

12